IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHE CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 06-453C |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | Judge Smith |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CHE'S OPPOSITION TO STORAGETEK'S MOTION TO INTERVENE IN THIS PRE-BID PROTEST**

CHE Consulting Inc. ("CHE") respectfully opposes Storage Technology Corporation's ("StorageTek") Motion to Intervene in this pre-bid protest. There can be no doubt that StorageTek will be able to compete for the services being sought by the RFQ (both as a prime and subcontractor), regardless of the outcome of CHE's pre-bid protest. Simply put, there is no StorageTek interest that could be adversely affected by the outcome of this case. As such, StorageTek does not satisfy the requirements for permissive intervention or intervention as of right, and its Motion must therefore be denied.

**Background**

To fully appreciate why StorageTek's intervention is inappropriate, a brief background of the underlying issues is in order.

This procurement involves the maintenance of robotic data storage tape libraries utilized by the Agency. The industry that maintains this type of computer equipment is comprised of three different categories of vendors. The first is the original manufacturer of the equipment itself – otherwise known as the OEM.

The second type of maintenance vendor is independent service organization. These are companies that have developed the technological capability of independently maintaining the robotic libraries – without any assistance from the OEM.[1]

The final vendor category is classified as a third-party maintenance provider. Such entities do not have the technological wherewithal to maintain the computer equipment without the direct assistance from either the OEM or an independent service organization.

Of particular significance to this action, is the fact that independent service organizations – such as CHE – directly compete against OEMs – such as StorageTek – for maintenance contracts that

[1] Independent service organizations are specifically recognized and protected by Congress under the Copyright Act. See CHE's Verified Complaint, ¶ 9.

are let in both the public and private sector.[2] Because of this direct and fierce competition between these two categories of vendors, OEMs such as StorageTek do not as a matter of practice enter into assistance agreements with independent service organizations like CHE. This constitutes the core of the problem with the Agency's RFQ.

CHE is protesting the Agency's mandate that any prospective bidder must have an assistance agreement in place with the OEM in order to submit a proposal. That provision unquestionably discriminates against the entire class of independent service organizations, because OEMs refuse to enter into such assistance agreements with their competitive enemies in the marketplace.

With that framework in mind, we now turn to the issue of intervention.

## **Argument**

### **I. StorageTek Cannot Intervene as a Matter of Right**

StorageTek claims that it should be allowed to intervene as a matter of right because its economic interests may be adversely

---

[2] For a list of Fortune 100 companies that chose CHE over StorageTek for the maintenance of their robotic tape libraries, see ¶ 59 of the Verified Complaint.

affected if CHE prevails. See StorageTek Memo in Support, pp. 3-4. In this regard, StorageTek claims that CHE is challenging the RFQ provision that requires the OEM to perform repair work in certain situations. If CHE prevails, argues StorageTek, then it will not have an opportunity to perform such services – hence it's economic interest in the litigation. Id.

Not only is StorageTek's alleged and tenuous economic injury inaccurate, it clearly does not satisfy the legal standard to intervene as a matter of right. Court of Federal Claims Rule 24(a)(2) allows for intervention as of right where:

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In interpreting that provision, the Federal Circuit explained that intervention "is proper only to protect those interests which are of such a ***direct*** and ***immediate*** character that the intervenor will either gain or lose by the ***direct*** legal operation and effect of the judgment." American Maritime Transport, Inc. v. United States, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (emphasis in original) (citation omitted).

Two issues emerge from these authorities. First, does StorageTek have a direct and immediate interest in this legal action? If so, then does this "interest" constitute a legally protectable interest as that term is defined under Rule 24(a)(2)? As established below, the answer to both questions is no.

### A. StorageTek's "Interest" is Contingent – Not Direct and Immediate

In holding that an intervenor's interest in the case must be "direct" and "immediate", the Federal Circuit held that the interest "***may not be either indirect or contingent***." American Maritime Transport, 870 F.2d at 1561 (emphasis added). In that case, the applicant sought intervention claiming that the outcome of the litigation could result in it having to share a maritime subsidy with the plaintiff. Id.

In denying intervention, the Federal Circuit reasoned that the applicant "could be exposed to 'subsidized competition' only if each and every one of a chain of other possible, but not certain, events were to take place." Id. Explained the court:

> First, the Israeli Government would have to continue to make grain cargos available for carriage by U.S. flag vessels. [The plaintiff and the applicant] would then have to be among those shipping companies having U.S. flag vessels available to carry the Israeli grain cargos. Next,

> both [the plaintiff and the applicant] would have to seek the Israeli cargoes. And finally, [the plaintiff and the applicant] would actually have to compete for the carriage of the same grain shipments. Short of the actual occurrence of each event in this chain, a Claims Court decision in favor of [the plaintiff] could not have the competitive effect envisioned by [the applicant].

Id. Because the interest was contingent, as opposed to being direct, the motion for intervention was denied. Id.

That contingent and indirect interest is precisely what StorageTek seeks to protect by intervening in this case. For example, StorageTek's economic interests are only affected if the discriminatory requirement of the RFQ is removed ***and*** if StorageTek or the two third-party providers it subcontracts with are not awarded the contract. By way of clarification, there were only four bidders during the initial procurement: StorageTek, CHE, VION and Northrop Grumman Information Technology ("NGIT").

Both VION and NGIT are third party providers. Because they do not have the capability of performing the maintenance on their own, they both subcontracted with StorageTek so that it would perform the services on their behalf. Thus, for example, if either NGIT or VION were awarded the contract, StorageTek would still be

in the position to perform the maintenance services even if the OEM support agreement requirement was eliminated from the RFQ.[3]

Thus, as in American Maritime Transport, StorageTek's economic interest is both indirect and contingent upon other possible, but not certain, events taking place – namely CHE being awarded the contract. Accordingly, StorageTek may not intervene as a matter of right.

### B. StorageTek's Interest is Strictly Economic in Nature Which Does Not Satisfy the Legally Protectable Interest Standard

StorageTek characterizes its interest in this matter as strictly "economic" in nature. See StorageTek Memo in Support, p. 3. The Federal Circuit, however, has determined that a "legally protectable interest requires "something more than merely an economic interest." American Maritime Transport, 870 F.2d at 1561.

> What has been required is that "the interest be one which the ***substantive*** law recognizes as belonging to or being owned by the applicant."

Id.; citing New Orleans Public Service, Inc. v. Ernest Morial, et al., 732 F.2d 452, 464 (5th Cir. 1984) (emphasis in original). In this case,

[3] It goes without saying that StorageTek's ability to submit a proposal is not affected by whether or not the OEM support agreement requirement is included in the RFQ.

there is no OEM ownership issue at all. Rather, the issue is, as StorageTek described – economic in nature – which is not a legally protectable interest and cannot, therefore, serve as the basis for an intervention as of right.

Finally, StorageTek's reliance on Comprehensive Health Services, Inc. v. United States and Holmes v. Government of Virgin Islands, are misplaced. Both cases presume that the applicant intervenor had both a legally protectable interest at stake and that the interest was both direct and immediate. As already established, neither of those mandatory requirements is present in this case, thereby rendering those decisions distinguishable.

## II. StorageTek Does Not Satisfy the Permissive Intervention Requirements

If this were a post-award protest and CHE was challenging the decision to award the contract to StorageTek – then perhaps permissive intervention would be appropriate. But this is a pre-bid protest where CHE is challenging the Agency's decision to discriminate against an entire class of the industry – a class, by the way, to which StorageTek does not belong.

In acting on a request for permissive intervention, a court will consider "whether the intervenors' interests are adequately

represented by other parties and whether they will significantly contribute to the full development of the underlying factual issues in the suit." New Orleans Public Service, Inc., 732 F.2d at 472 (citations omitted). In that case, the court determined that since the "interest" at issue was economic in nature, it did not constitute a legally protectable interest and could not, therefore, serve as a basis for permissive intervention. Id. at n. 40.

As already established above, StorageTek candidly admits that its interest in this case is purely economic. Because that is not a legally protectable interest, it matters not whether the Agency protects that unique StorageTek concern. Simply put, StorageTek's tenuous economic considerations are irrelevant to the issue of intervention.

As an alternative basis for seeking permissive intervention, StorageTek claims that it will significantly contribute to the development of whether the requirement for OEM support is reasonable. That is impossible. The issue of "reasonableness" for inclusion of an alleged discriminatory RFQ provision goes directly to the Agency. In other words, is the Agency's rationale for including this provision reasonable? Obviously, StorageTek cannot substitute

its own rationale for that of the Agency. Thus, it cannot, in any meaningful way, significantly contribute to the development of the underlying issues.

Finally, StorageTek falsely claims that it contributed to the development of the GAO protest by supplying evidence that companies, other than CHE, were able to obtain an OEM support agreement from StorageTek. See StorageTek Memo in Support, p. 6. StorageTek's assertion here is simply inaccurate.

StorageTek did enter into OEM support agreements with companies other than CHE – namely VION and NGIT – the third party providers that are described above. But it was CHE – not StorageTek – that first brought these arrangements to the GAO's attention. In fact, CHE described the StorageTek/VION and NGIT relationship in its initial protest document. See AR 1302.

StorageTek's claim that it provided this evidence to the GAO – thus contributing to the protest – is directly contradicted by the record and should not, therefore, be used as a basis for permissive intervention.

## Conclusion

For all of the foregoing reasons, CHE respectfully requests that StorageTek's Motion for Intervention be denied.

Respectfully submitted,

THE KELLOGG LAW FIRM, P.C.

By_/s/ Steven E. Kellogg_________

Steven E. Kellogg
2129 W. Main Street
Belleville, IL 62226
(618) 234-1900
(618) 234-5594 FAX
skellogg@kellogglawfirm.com

Attorney for the Plaintiff

## Certificate of Service

I hereby certify that on June 23, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties to this case. A separate copy was served via e-mail to StorageTek's counsel.

/s/ Steven E. Kellogg_______________
Steven E. Kellogg