IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHE CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 06-453C |
| | ) | |
| THE UNITED STATES | ) | Judge Smith |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR LIMITED DISCOVERY**

COMES NOW the Plaintiff CHE Consulting, Inc. ("CHE"), by and through its undersigned counsel, and respectfully moves to engage in limited discovery by taking the deposition of William Eldridge in the above-captioned pre-bid protest action. In support of its Motion, CHE states:

**Background**

1. The RFP at issue seeks bidders who can perform hardware maintenance on the Agency's robotic tape libraries – all of which were originally manufactured by Storage Technology Corporation ("StorageTek"), which is a division of Sun Microsystems.

2. The industry for these type of services is made up of the following three types of vendors: (1) the original equipment

manufacturer ("OEM"); (2) independent service organizations – which are companies that have the technological capability of performing all aspects of the maintenance requirements without ever having to rely on assistance from the OEM; and (3) third party vendors – which do not have the technological wherewithal to perform the maintenance services without enlisting the assistance of an OEM or an independent service organization. Indeed, such third party organizations typically subcontract all of the maintenance work on this equipment to StorageTek.

3. The procurement in this case requires the bidder to have an agreement with the OEM that if it cannot repair a piece of equipment within 4 hours, it can call in the OEM to address the problem.

4. This provision, however, knowingly and purposely discriminates against independent service organizations. The Agency is acutely aware that the OEM in this case will not enter into an agreement to assist an independent service organization. This is so because independent service organizations – like CHE – are direct competitors of OEMs like StorageTek.

**The Remedy CHE Seeks**

5. CHE seeks one of two possible methods by which the RFP can be revised such that independent service organizations would not be discriminated against, thereby furthering the goal of competition.

6. First, the Agency could simply revise the RFP so that it can independently verify the technical capabilities of the independent service organization – to determine if it matches the capabilities of the OEM. If so, then no OEM support agreement would be required.

7. Given the undisputed facts in this case, this type of revision to the RFP appears to be the most logical and practical. Currently, CHE maintains over 2,700 pieces of StorageTek equipment for various governmental agencies (both state and federal) and Fortune 100 companies in 22 different states. These agencies and corporate entities – unlike DISA – do not require OEM support agreements. They only require proof that CHE has the technological capabilities to perform the work. It should also be noted that these contracts are competitively procured and that StorageTek participated (but lost out to CHE) on those procurements.

8. Second, the Agency could structure the RFP such that if the vendor was unable to repair a critical piece of equipment within the 4 hour time frame, the Agency would "call in" the OEM to affect the repair. Indeed, this Agency structured an RFP like that for its most recent acquisition for the same services at its Slidell facility. Moreover, the contract prior to the current one also had a similar provision in place.

**The Gaps in the Administrative Record that Justify Limited Discovery**

9. There is nothing in the administrative record that explains why the Agency could not employ a less restrictive means of procuring these services by, for example, evaluating an independent service organization's technological capabilities to determine if it could satisfy the requirements of the RFP without assistance from the OEM.

10. Moreover, with respect to having the Agency "call in" the OEM, the administrative record lacks any meaningful insight as to why that less restrictive method of competition would be unduly burdensome.

11. The only record on that issue is an e-mail from William Eldridge where he states that it would be a "very undesirable burden"

for the Government to have to initiate OEM involvement in the "infrequent" circumstances where OEM assistance may be needed. See AR 1133.

12. But there is nothing in that record, however, suggesting what that "undesirable burden" would be and why restricting competition by eliminating independent service organizations from the competitive mix is the only solution to avoiding such a burden.

13. "Recognizing the shortcomings in some administrative records proferred in bid protests, the Court has adopted a flexible approach both in putting together the evidence that will be considered and in discovery, balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry." International Resource Recovery, Inc. v. United States, 59 Fed. Cl. 537, 542 (2004) (citing numerous cases in which the court allowed the protester to take the deposition of the contracting officer).

14. In this case, CHE would like to take the deposition of Mr. William Eldridge. It is believed that he is the most knowledgeable person at the Agency regarding these issues, and is therefore capable of filling in these gaps contained in the administrative record.

15. Mr. Eldridge has already provided a declaration to the Court. Unfortunately, that sworn statement did not address the substantive issues of this protest.

16. Moreover, Mr. Eldridge has mischaracterized an occurrence between IBM, CHE and the Agency relating to the mainframe contract – which is not the contract at issue here. Thus, deposing Mr. Eldridge will also afford CHE the opportunity to clarify the misstatements of the record with respect to that particular issue.

17. Given the fact that the parties are currently on a tight briefing schedule, CHE respectfully requests that a conference call between the Court and the parties on CHE's Motion occur no later than Wednesday, July 19, 2006.

Respectfully submitted,

THE KELLOGG LAW FIRM, P.C.

By /s/ Steven E. Kellogg

Steven E. Kellogg
2129 W. Main Street
Belleville, IL 62226
(618) 234-1900
(618) 234-5594 FAX
skellogg@kellogglawfirm.com

Attorney for the Plaintiff

**Certificate of Service**

I hereby certify that on July 18, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties to this case.

/s/ Steven E. Kellogg_______________
Steven E. Kellogg