# In the United States Court of Federal Claims

Case No. 06-453C
Filed Under Seal December 7, 2006
Reissued for Publication December 15, 2006
FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **CHE CONSULTING, INC.**, | * | |
| *Plaintiff,* | * | |
| v. | * | |
| **THE UNITED STATES**, | * | Bid Protest; 28 U.S.C. § 149; 5 U.S.C. § 706; RCFC 52.1(b); 48C.F.R.6.101(b);48C.F.R. 11.002(a)(1)(ii); Minimum Needs; Rationally Related; Unduly Restrictive; CICA; 41 U.S.C. § 253(a)(1)(a) (2000) |
| *Defendant,* | * | |
| and | * | |
| **STORAGE TECHNOLOGY CORPORATION**, | * | |
| *Defendant-Intervenor.* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

*Steven Kellogg*, Kellogg Law Firm, Belleville, IL, for Plaintiff.

*Sean B. McNamara*, Trial Attorney, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Todd M. Hughes*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for Defendant. *James W. DeBose*, Deputy Legal Counsel DITCO/D01DT, Scott AFB, IL, of counsel.

*John J. O'Brien*, Cohen Mohr, LLP, Washington, D.C., for Defendant-Intervenor.

## OPINION and ORDER

**SMITH, Senior Judge:**

In this bid protest case, Computing Services Directorate (CSD) of DISA, an agency that provides information systems in the Department of Defense (DOD), solicited for a contractor to

provide on-site complete hardware maintenance from predictive to preventive, as well as software and technical support, at various computer processing centers. One type of equipment covered in the solicitation was storage libraries, which are large, silo-type pieces of equipment containing tape drives – accessed with robotic arms and communication devices — used for storing information. These robotic arms are maintained on a "Level 1" basis, usually the most sensitive of procurements, because the processing centers support military and civilian DOD employees in civilian and defense-related activities. The reason for the high level basis is that, for example, because this equipment accounts for work hours of DOD employees, issues pay checks and tracks repair parts to maintenance depots for military equipment, failure of the equipment involved could result in pay checks being issued late or in repair parts being delivered in an untimely manner, which could affect fleet readiness.

In the Statement of Work, DISA provided that the contractor would perform, among other services, remedial maintenance which includes unscheduled maintenance to diagnose and repair malfunctioning hardware which may require support from the original equipment manufacturer, OEM, if the contractor cannot repair the hardware within a four hour window. In this case, the OEM is Storage Technology Corporation (StorageTek). CHE Consulting, Inc. ("CHE") claims that this provision limits competition because the prime contractor must subcontract all the maintenance requirements to StorageTek. By partnering with a prime contractor, CHE claims that only the illusion of competition is created. CHE argues that there are less restrictive means of accomplishing the objective of properly maintaining the robotic storage tape library system.

CHE filed a motion for summary judgment on the administrative record advancing two arguments. First, CHE argued that the restructuring of the solicitation unduly restricts competition by discriminating against all independent service organizations; and second, that the corrective action taken by DISA was arbitrary, capricious, and contrary to law. In response, Defendant filed a motion to dismiss or, in the alternative, a cross-motion for summary judgment on the administrative record. Intervenor, StorageTek, also filed a motion for summary judgment and response to Plaintiff's motion for summary judgment. After oral argument and careful review, the Court finds that DISA's decision was not arbitrary, capricious, an abuse of discretion nor contrary to law and, therefore, **GRANTS** Defendant's cross-motion for summary judgment.

## I. Factual and Procedural History

The history of this matter began on August 29, 2005 when DISA issued its solicitation seeking a contractor to provide on-site "predictive, remedial and preventive hardware maintenance," as well as software and technical support, at various computer processing centers. AR 140. The solicitation covered more than 1,100 pieces of equipment and was to extend for one year of performance with a one-year renewal option. AR 5, 10-27. DISA invited five companies to participate in the bidding, and no other companies, such as CHE, were invited. AR 53-57; 1458-59; 1647-48. CHE, however, learned of the solicitation and expressed an interest in submitting a bid. AR 137-38. The contracting specialist assigned to the procurement provided the information to CHE for bidding purposes. AR 139. Thereafter, CHE and three other vendors submitted quotes.

The proposals of each were found to be technically acceptable, and no vendor had past performance issues, so price became the deciding factor. AR 966. CHE was more than $3.5 million less than the next lower bidder's quote, thus CHE was awarded the contract. *Id.*

Thereafter, in October 2005, StorageTek filed its protest with GAO contesting the decision to award the contract to CHE. StorageTek asserted that CHE would not be able to fulfill the requirements because of 1) an injunction issued by a U.S. District Court that would prevent CHE from using StorageTek's software, and 2) CHE could not obtain back-up repair support from StorageTek. AR 1031-33. StorageTek also alleged flaws in DISA's best value determination. AR 1033-35. The GAO dismissed this protest in November 2005, holding that review was inappropriate because the subject matter of the protest was pending before a court of competent jurisdiction. AR 1044.

After the protest was dismissed by the GAO, StorageTek again filed a protest with the GAO on new grounds. AR 1052-64. Shortly thereafter, StorageTek also requested reconsideration of the previous dismissal. DISA moved to dismiss the new protest by StorageTek on the grounds that while an injunction was no longer in effect restraining CHE from performing under the contract, litigation was still continuing between StorageTek and CHE. AR 1397-98. The GAO disagreed and reinstated StorageTek's protest.

In response to StorageTek's GAO protest, DISA took corrective action on December 5, 2005, and terminated CHE's contract for convenience. AR 1087, 1092, 1106. Corrective action was ordered by the Director of DISA's Procurement and Logistics Directorate. AR 1082-84. Most important to the current litigation, the Director found that the request for quote (RFQ) failed to mention technical acceptability, a factor upon which awards would also be judged. AR 1083, 8-9. Therefore, it was deemed necessary to re-solicit the contract.

After conferring with its technical representative, DISA re-solicited the contract. One of the changes to the solicitation included a revised remedial maintenance provision. AR 1146. The new provision required the contractor to be "responsible for responding and repairing, or when necessary, acquiring any OEM support *without Government intervention*, in accordance with this specification." AR 1146 (emphasis added). William Eldridge, the contracting officer's technical representative, clarified this purpose in an email to DISA stating that "We know from experience that there will be a need, however infrequent, to actively involve the OEM occasionally in a difficult remedial repair." AR 1133. The solicitation still required that the contractor call in the OEM in the event a repair would exceed four hours. AR 1142.

The new requirement now contained in the solicitation was the mandate that vendors be able to obtain OEM support without government intervention. This was included in the solicitation because CHE suggested that DISA use a remedial repair procedure similar to one used in a contract between CHE and DISA at a Slidell, LA facility, instead of requiring an agreement between the contractor and the OEM. AR 1127-28. In the Slidell contract, CHE reserved the right to call in the OEM for a repair, if necessary, with any associated charges levied back to CHE. Before re-soliciting the request for quote, Eldridge was asked about the possibility of adding this language

to the current solicitation. Eldridge advised against such an adoption for several reasons including cost and botched repair work. AR 1133.

Thereafter, CHE protested to DISA its decision to re-solicit the contract with the new requirement. The agency denied CHE's protest, and in addition noted the reasons for the differences between the current solicitation and the Slidell procurement. AR 1299. CHE then took its case to the GAO alleging 1) the new restriction unduly restricted competition, 2) that DISA's administrative convenience could not support the OEM clause, and 3) that the OEM clause resulted in a de facto sole source procurement because only StorageTek could perform under the contract. AR 1300-03. DISA responded and then CHE filed comments addressing some of the concerns in DISA's response. Specifically, CHE advanced the proposition that DISA could "call in" the OEM, if needed, and that if disputes were to arise those could be resolved under the RFQ's dispute clause. AR 1360. This procedure, CHE advanced, would not require the agency to enter into a separate contract with StorageTek, the agency could use a credit card for the purchase or other expedited procedure in place of a separate contract. AR 1361-62. Ultimately, the GAO denied CHE's protest and CHE filed its protest in this Court advancing those same arguments.

CHE then filed the present action seeking declaratory and injunctive relief relating to a decision by DISA to cancel an award of contract, to re-solicit the contract with amended terms of solicitation or alternatively to reinstate CHE's contract. Additionally, CHE requests a declaration that the solicitation was improper, that DISA's decision to take corrective action was improper, and for costs. The government timely filed the administrative record and StorageTek was granted the right to intervene as Intervenor-Defendant. CHE then requested to supplement the administrative record. The Court granted the request and the record was supplemented with maintenance records and declarations provided by agency employees, John Cleary and William Eldridge. Cleary provided documents relating to StorageTek's performance as a subcontractor. AR 1402-09. Cleary also stated that at times the four-hour response time for non-critical equipment was sometimes waived. AR 1403. For critical equipment, such as failure of robotic arms, Cleary indicated that the four hour response time would not be waived. AR 1402-03. CHE further requested limited discovery and to take the deposition of William Eldridge, DISA's technical representative and Anne Hellman, the DISA contracting officer responsible for the procurement. These motions were also granted. CHE requested the depositions to explore the possibility that "the Agency could simply revise the RFP so that it can independently verify the technical capabilities of the independent service organization" and potentially do away with the OEM requirement. Pl. Motion for Limited Discovery at 3. In addition, the depositions were to consider whether the agency could "call in" the OEM without an agreement, were the vendor unable to repair a piece of equipment. *Id.* at 4. Eldridge addressed both scenarios. *See generally* Eldridge Deposition. Hellman provided testimony regarding the agency "calling in" the OEM. *See generally* Hellman Deposition. At the conclusion of the depositions, and pursuant to the briefing schedule issued by the Court, CHE filed its motion for summary judgment on the administrative record. Defendant and Intervenor filed their motions accordingly and oral argument was heard thereafter.

After careful review and oral argument, the Court finds that the solicitation, although seemingly limiting the procurement to be performed to only the OEM, is based on a substantial basis

in fact. The Court recognizes DISA's technical expertise and, thus, must defer to its analysis. *See Fire-Trol Holdings, LLC v. United States*, 66 Fed. Cl. 36, 40 (2005). Therefore, the Court GRANTS Defendant's motion for summary judgment on the administrative record. While the Court might have awarded the contract to CHE the Court does not make this decision *de novo*. The agency has this responsibility and from the record did not exercise it improperly.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over pre and post-award bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874. In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2000). *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 384-85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

To determine whether DISA's decision was one that was arbitrary and capricious the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324,1333 (Fed. Cir. 2001). The Court must determine "whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Id.* at 1332 (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)). The burden falls on the protestor to show that the award decision had no rational basis. *Id.* For an agency's decision to be irrational, the court must find that the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court will "interfere with the government procurement process 'only in limited circumstances.'" *EP Production, Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005)(quoting *CACI, Inc.-Federal v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983). In evaluating an agency's decision, the Court cannot "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Moreover, when a protestor asserts a violation of a regulation or procedure, a disappointed bidder must show "a clear and prejudicial violation of applicable statues or regulations." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330-31 (Fed. Cir. 2004) (quoting *Banknote Corp. of MA. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). In order to demonstrate prejudice, a protestor must show that there was a 'substantial chance' it would have received the contract award but for agency errors in the bid process. *TLT Constr. Corp. v. United States*, 50 Fed. Cl. 212 (2001).

Rules of the United States Court of Federal Claims (RCFC) 52.1(b) allow a party to file a motion for summary judgment on the administrative record. Under this rule, the Court reviews all the evidence in the record to see if given all the disputed and undisputed facts a party has met its burden of proof. *A & D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126 (2006).

## III. Discussion

CHE contends that the solicitation containing the new OEM term violates the Competition in Contracting Act (CICA). 41 U.S.C. § 253(a)(1)(a) (2000). Specifically, CHE argues that the solicitation is structured so that only the OEM can perform the actual requirements of the contract. Pl. Mem. at 4. It is clear that CICA imposes upon an agency the duty to "obtain full and open competition." *Id.* An agency "shall provide for full and open competition through use of the competitive procedure(s) . . . that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently." 48 C.F.R. 6.101(b). Restrictive provisions that are included in solicitations are allowed only "to the extent necessary to satisfy the needs of the agency or as authorized by law." 48 C.F.R. 11.002(a)(1)(ii).

Moreover, it has been held that solicitation terms must have a rational relationship with an agency's minimum needs, must not be unduly restrictive, and must be written to enhance competition and innovation. *Wit Assocs., Inc. v. United States*, 62 Fed. Cl. 657, 662 (2004). The determination of an agency's minimum needs "is a matter within the broad discretion of agency officials . . . and is not for this court to second guess." *Id.* (internal citations omitted). An agency's determination of the "best method of accommodating" its needs also falls within the agency's discretion. *United Enter. & Assocs. v. United States*, 70 Fed. Cl. 1, 26 (2006). Therefore, because the burden of proof falls upon the plaintiff, CHE must show that the OEM term 1) bears no rational relationship to the agency's minimum needs; 2) is unduly restrictive; and 3) is not written to enhance competition and innovations. *See Wit Assocs.*, 62 Fed. Cl. at 662. Defendant contends that CHE did not meet this burden. Further, Defendant notes that the GAO found that DISA acted reasonably, AR 1344-47, and that while those decisions are not binding on this Court, they are similar to "expert opinion, which the court should prudently consider." *United Enter.*, 70 Fed. Cl. at 26; Def. Mem. 32.

### 1. The OEM requirement meets DISA's Minimum Needs and is Rationally Related to That Need

First, Defendant argues that the OEM requirement meets the DISA's minimum needs. The record is clear, and CHE does not contest, that maintaining the equipment involved in this procurement is critical for the DOD in both war and peace. *E.g.*, AR 1412. The record shows that the equipment being maintained stores information related to repair parts for military equipment and thus, system downtime could affect the military's ability to repair its fleet. *Id.* Therefore, due to the critical nature of this computer equipment, the Court finds that DISA's insistence that the equipment be maintained with "the highest level of maintenance service" is a minimum need to DISA and is rationally related to that need. The deposition testimony from Eldridge solidified DISA's position with regard to the need, as Eldridge provided an example of a time wherein it was necessary to call in the OEM. AR 1412. In addition, Eldridge demonstrated several instances of how a vendor is tied to an OEM. AR 1619-21. For instance, a contractor might need to receive advice or an opinion from the OEM. AR 1621. The OEM might provide changes to the equipment, upload new programs from the OEM and or coordinate replacement parts. AR 1621. CHE does

not dispute this. Instead, CHE advances that it has never had to "call in" StorageTek because it could not fix a piece of equipment. However, this does not show that DISA's opinion is irrational. The equipment being maintained is for the Department of Defense. As there is a risk that a vendor might not be able to effect a critical repair in a timely manner, the OEM provision limits that risk. Therefore, the Court does not find DISA's decision to be irrational.

**2. The OEM requirement is not Unduly Restrictive**

The Court now turns its attention to the second challenge, whether the OEM requirement is unduly restrictive. CHE urges that the solicitation is unduly restrictive and provides two possible alternatives that DISA could employ. At both the GAO protest level and here in this Court, CHE suggests that DISA could independently verify the technical capabilities of the bidder thereby allowing vendors that do not have an OEM agreement in place to be competitive. Pl. Mem. 24. Even though Eldridge acknowledged that this could be done, Defendant argues that it "is a superficial proposal tailored to its [CHE] business needs not those of the agency." Def. Mem. 34. Instead, Defendant argues the agency must, based on its experience, keep its requirement for OEM support.

In the alternative, CHE advances that DISA could "call in" the OEM if the contractor itself were unable to do so. Thus, the need for the OEM clause becomes unnecessary. Pl. Mem. 29. CHE suggests that DISA could call up the OEM and use a credit card or purchase order to purchase the OEM's services as DISA has done in previous contracts. *Id.* at 31-33. Defendant counters that this oversimplifies the procurement process and that because this contract covers equipment that must run 24/7, procurement might not be available at a critical time if the agency had to "call in" the OEM rather than the awardee. Def. Mem. 35. Defendant further asserts that although this process might have been done in the past, it does not prove that the current proposal is unreasonable. *Id.*

The Court agrees with Defendant that the OEM requirement is not unduly restrictive. In reviewing the evidence before the Court it is clear that the agency knows, based on its experience, that OEM support may be necessary with regard to this contract to perform a timely repair. AR 1133, 1619-22. The Court further finds that the OEM clause is rationally derived from this possibility and, therefore, because the agency finds that this clause is the best way to manage its risk, the Court must abide by the agency's judgment. Thus, the Court finds that the OEM requirement is not unduly restrictive.

**3. The re-solicitation does not discriminate against a class of Vendors**

With regard to the third challenge, CHE contends that the re-solicitation discriminates against an entire class of vendors. CHE argues that the present industry is comprised of three different types of vendors: OEMs, independent service organizations (ISO), and third party providers. Pl. Mem. 7. CHE advances that it is an ISO, and as an ISO it can perform all the contract requirements, thus negating the need for OEM support. *Id.* In support of its contention that it can perform all the contract requirements, CHE provided the affidavit of David York, President and CEO of CHE. Document 40. In his affidavit, York stated that it has been an ISO for the robotic tape

library products since 2001 and has the tools and software to properly diagnose the equipment. *Id.* at 2. In addition, CHE contends that in this instance, the OEMs and ISOs are direct competitors and, as such, OEMs will not enter into agreements with an ISO. *Id.* at 8. Furthermore, CHE relies on Hellman's deposition testimony that it is, in fact, an ISO. Pl. Mem. 7. On the other hand, Defendant argues that CHE's portrait of the industry is without support. Def. Mem. 38. Defendant argues that Hellman's testimony in no way suggested that CHE was an ISO, but instead her testimony regarding the ISO issue was in response to questions posed by CHE's attorney advancing the idea that Eldridge had agreed that CHE was an ISO. Even if this Court were to find that CHE is an ISO, Defendant contends that Eldridge's deposition testimony solidifies the fact that the agency will need, at some point during the life of the contract, OEM support. *Id.*

After review of Hellman's testimony, the Court observes that the questions posed to Hellman suggested that a credit card or blanket purchase order could possibly be used by the agency, if necessary, to pay the OEM if, in fact, no agreement existed between the OEM and ISO. In addition, the Court notes that Hellman further testified that this type of set-up did exist on contracts previously awarded by DISA. However, it is it clear to the Court that Eldridge's testimony was firm that no vendor could perform all the requirements of this particular DISA contract without OEM support. AR 1619-22. In fact, Eldridge's deposition testimony fully explained his rationale behind the solicitation's new requirement, and noted specifically that while the provision requiring no government intervention was new to this particular solicitation, it was a provision that was necessary for these types of Level I contracts for cost reasons and responsibility for "botched repair work." AR 35, 1132, 1411. It is clear to the Court that although it appears that CHE may not be able to obtain an OEM agreement from StorageTek in this case, it does not prove that any other company might not be able to obtain an agreement with StorageTek. It is clear that the new requirement was put in place in order to meet the agency's minimum needs and, therefore, the Court is satisfied that the provision was not put in to limit competition.

## IV. Conclusion

After review, the Court finds that DISA's decision to amend the solicitation with the new requirement was not arbitrary, capricious, an abuse of discretion, nor contrary to law. The Court finds that the provision has a rational relationship with meeting the agency's minimum needs, is not unduly restrictive, nor is it written to restrict competition. Therefore, the Court hereby **GRANTS** Defendant's cross-motion for summary judgment. In light of this, the Court **DENIES AS MOOT** Intervenor's motion for summary judgment on the administrative record and Defendant's motion to dismiss. The Court further **DENIES AS MOOT** Plaintiff's request for injunctive relief, its challenge to DISA's corrective action, and its challenge to DISA's termination for convenience. The Clerk is directed to issue judgment accordingly.

**It is so ORDERED.**

s/ Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE