IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHE CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 06-453C |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | Judge Smith |
| | ) | |
| Defendant, | ) | |
| | ) | |
| STORAGE TECHNOLOGY CORPORATION | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

COMES NOW CHE Consulting, Inc. ("CHE"), by and through its undersigned counsel, and pursuant to RCFC 59, and respectfully seeks reconsideration of the Court's December 7, 2006 decision.

**The Court Should Have Followed Up On its Instinct to Order Mr. Eldridge to Testify**

During oral argument, the Court expressed the need to have Mr. Eldridge, DISA's technical representative, testify before it so that an assessment of his credibility could be made. Indeed, based upon the tenor and tone of the oral argument, it appeared rather clear that the Court was suspect of DISA's claim that it would simply be too

arduous of a process for the government – rather than the vendor – to separately contract with StorageTek if OEM assistance was ever needed. Thus, the parties were ordered to advise the Court of Mr. Eldridge's availability so that his testimony could be scheduled in short order.

However, after the Court learned that the parties could not schedule Mr. Eldridge's appearance for more than 30 days, the Court reversed its decision, choosing instead to rely solely on Mr. Eldridge's deposition testimony.

Based upon the inherent underlying errors contained in the Court's decision, there can be no doubt that its initial instinct was right, and that Mr. Eldridge should have been examined before the Court. For the reasons presented below, CHE strongly urges the Court to set aside its December 7, 2006 decision and order Mr. Eldridge to appear so that the Court can independently verify whether the Agency's minimum needs could be met if it, as opposed to the vendor, obtained OEM support.

## The Court Failed to Decide the Ultimate Issue

The Court's principle error – which was legal in nature – was its failure to determine whether an alternative approach to OEM support,

which did not restrict competition, would satisfy DISA's minimum needs. If so, then CICA would demand that the Agency utilize that method of OEM support so as to promote competition. To decide otherwise would essentially render CICA meaningless.

Yet for reasons that are not at all clear, the Court limited its consideration of the issues to whether OEM support in general was rationally related to the Agency's minimum needs. See 12/7/06 Decision, pp. 6-8. Because OEM support may be needed at some point during the life of the contract, reasoned the Court, it was not irrational for DISA to have a mechanism in place to ensure such support. Id.

But that particular holding, by itself, is of little value to the case at hand. The ultimate question before the Court was not whether OEM support might be necessary. Rather, it was whether an alternative mechanism for obtaining OEM support – which does not restrict competition – would also satisfy the Agency's minimum needs. If so, then the Agency's decision not to employ this method would be deemed a violation of CICA as it would have improperly and unnecessarily stifled competition.

As briefed by the parties, there are essentially two mechanisms by which DISA could ensure OEM support. The first, which requires the vendor to obtain such support, restricts competition. Indeed the Court acknowledged this fact when it found that the solicitation as written would result in only the OEM being able to perform the requirements of the contract. See 12/7/06 Decision, p. 4.

The alternative approach, which has been successfully employed by this very agency in the past, requires the Agency to obtain OEM support if needed. This would allow independent service organizations such as CHE to participate in the procurement, thereby enhancing the competition.

Thus, the ultimate issue is whether the Agency's minimum needs can be satisfied if it, as opposed to the vendor, obtains the OEM support. But the Court erred when it failed to reach this essential issue, which is the reason why CHE seeks reconsideration of the Court's decision.

CHE strongly believes that if the Court had required Mr. Eldridge to appear before it, the Court would have had a more informed basis upon which to determine (or at the very least consider) this ultimate issue.

**Mr. Eldridge's In-Court Testimony Would be of Great Assistance to the Court in Determining the Ultimate Issue**

The last section of the Court's Decision underscores precisely how Mr. Eldridge's in-court testimony could have assisted the Court in rendering its opinion.

At first, the Court seems to recognize that there are alternative contracting means by which the Agency, as opposed to the vendor, could successfully "call in" the OEM if the vendor could not repair a piece of equipment within the four hour time frame. See 12/7/06 Decision, p. 6. But then, in the very next sentence, the Court seemingly casts aside that understanding by concluding "that Eldridge's testimony was firm that no vendor could perform all the requirements of this particular DISA contract without OEM support." Id.

In essence, the Court has missed the critical step between these two conclusions: i.e. that it is not OEM support per se that is at issue, but rather, how best to obtain that support – consistent with the dictates of CICA. Indeed, had Mr. Eldridge testified, it is quite likely that the Court would not have missed this crucial distinction.

Finally, the Court claims that Mr. Eldridge's deposition testimony confirms that having the vendor contact the OEM is better

for the Agency in terms of cost reasonableness and responsibility for botched repair work. See 12/7/06 Decision, p. 8. Unfortunately, the citations provided by the Court are not of Mr. Eldridge's deposition. Id. Indeed, had the Court actually considered his and Ms. Hellman's deposition testimony on the subject, it would have learned that the Agency could have avoided this concern by merely inserting a disputes clause in the contract. AR 1565-66; 1727-28. Thus, these reasons could not be utilized to justify a restriction on competition. That would indeed be considered an irrational decision on the part of the Agency.

**Other Errors**

The Court placed substantial weight on 4 pages of Mr. Eldridge's deposition testimony, namely AR 1619-22. See 12/7/06 Decision, pp. 6-8. The Court maintains that this section demonstrates how a vendor is tied to an OEM. Id. p. 6. "For instance, a contractor might need to receive advice or an opinion from the OEM. AR 1621. The OEM might provide changes to the equipment, upload new programs from the OEM and or coordinate replacement parts. AR 1621."

The Court has simply misunderstood Mr. Eldridge's testimony, and actually ignored other statements made by him at the end of his deposition which contradict these passages relied upon by the Court. Having Mr. Eldridge testify in court would have prevented the Court from making these critical factual errors.

With respect to the need for a contractor to obtain advice from the OEM, the Court ignored Mr. Eldridge's later testimony in which he acknowledged that a vendor, like CHE, could simply look up the OEM's operating standards without ever having to consult with the OEM itself. <u>See</u> AR 1630-31.

As for engineering changes or microcode updates, those issues have absolutely nothing to do with the type of OEM support that is being protested. Focusing in on this particular testimony further demonstrates why Mr. Eldridge's testimony would have assisted the Court in understanding the true issues at hand. Indeed, had he testified, the Court would have learned that engineering changes and micro code updates are unrelated to the issue of obtaining OEM support when a critical component cannot be repaired by the vendor. Simply put, this is an "apples to oranges" type of comparison that

could have been avoided had the Court stuck with its initial instinct to have Mr. Eldridge provide live testimony.

And as for coordinating OEM certified replacement parts, upon re-examination by CHE's counsel, Mr. Eldridge was forced to admit that he had been misinterpreting the RFQ requirements. See AR 1629-30. There was in fact no requirement that a vendor, such as CHE, obtain replacement parts that were independently certified by the OEM. Id.

Finally, the Court mistakenly claimed that Mr. Eldridge, in his deposition, provided an example of a time wherein it was necessary to call in the OEM. See 12/7/06 Decision, p. 6. In fact, the Court actually cited to Mr. Eldridge's declaration, not his deposition. In any event, had the Court actually considered Mr. Eldridge's deposition testimony on the matter, it would have learned that: (a) this instance did not involve StorageTek equipment; and (b) the OEM was not called in to assist the vendor. Rather, the OEM was there to replace a part in DISA's mainframe – not its StorageTek library – that it was required to replace under its warranty with the Agency. The vendor, CHE in this case, simply had to wait for the OEM to finish, before it could proceed with a repair. See AR 1626-27. Moreover, CHE's

president explained this issue in great detail in his affidavit which was attached to CHE's filing, which apparently was not considered by the Court.

**Conclusion**

If an agency is presented with two procurement options, both of which satisfy its minimum needs, but only one of which promotes – rather than restricts – competition, then CICA demands that the agency employ that option. That was the key issue before the Court. Unfortunately, the Court apparently misunderstood Mr. Eldridge's deposition testimony, which resulted in the Court's failure to reach this definitive issue of the case.

CHE respectfully requests that the Court set aside its decision in this case and order Mr. Eldridge to appear so that these factual issues can be fully explored by the Court, thus allowing it to make a more informed judgment consistent with principles of competition as espoused by CICA.

At the very least, CHE requests that the Court institute a teleconference with the parties to take up the issue of CHE's Motion for Reconsideration.

Respectfully submitted,

THE KELLOGG LAW FIRM

By_/s/ Steven E. Kellogg________
Steven E. Kellogg
2129 W. Main Street
Belleville, IL 62226
(618) 234-1900
(618) 234-5594 FAX
skellogg@kellogglawfirm.com

Attorney for the Plaintiff

**Certificate of Service**

I hereby certify that on December 18, 2006, the foregoing was electronically filed and therefore served to all parties to this action.

/s/ Steven E. Kellogg_______________
Steven E. Kellogg